BOWEN *vs.* BOWEN.

*In the matter of the estate of* FRANCIS BOWEN, *deceased.*

THE brother of the intestate, nearly two years after his death, presented a claim for services and assistance in his business, for a period of five years before his decease. It appearing that the claimant was boarded and clothed by the intestate,—*Held*, under the circumstances, that no express contract having been proved, and no demand shown in the intestate's lifetime, the law did not imply an agreement to compensate the claimant.

Demands of this nature are not to be regarded with any favor; and the evidence should be clear, that the services were performed under a mutual expectation of compensation.

T. W. SMITH, *for Petitioner*,
GEO. SHEA, *for Administratrix.*

THE SURROGATE. The deceased died intestate, leaving a small property to descend to his widow and children. Nearly two years after his death, his brother, Michael Bowen, put in a claim of $555, for services rendered the deceased, as clerk, from January, 1845, to February, 1848, and from August, 1848, to April, 1850, when the intestate died. No express contract is proved, but it is urged that the law will imply an agreement to compensate him. That must depend upon all the circumstances. The claimant came to this country at the instance and expense of his brother, who kept a small grocery-store in this city. He attended the store, and was boarded and clothed by his brother; but it does not appear that he ever presented a claim for wages until long after his brother was dead. Demands of this character are not unusual in administration cases; and, as the party who had the best means of controverting them has been removed by death, they

are not to be regarded with any favor, especially where the claimant has allowed his claim to sleep during the lifetime of the decedent. In all cases of this kind, the evidence should be very clear that the services were performed by the claimant, expecting to be paid for them, and that the decedent so understood it, or had reason to believe he was to be charged therefor. In *Davies* vs. *Davies*, 9 *C. & P.* 87, the plaintiff and his wife boarded and lodged in the house of the defendant, and assisted him in his business; and it was held that neither the services on the one hand, nor the board and lodging on the other, could be charged for, unless the jury were satisfied that the parties came together on the terms that they were to pay and to be paid. In *Weir* vs. *Weir's Admr.*, 3 *Ben Munroe's R.*, 645, the plaintiffs were nephews of the deceased, and had emigrated to this country some years before the death of their uncle, without property or means, and were taken into his employment, clothed and decently supported by him. They assisted him in his business, one for twenty years, and the others for six and eight. It was held that the estate of the deceased was not liable. In *Robinson* vs. *Cushman*, 2 *Denio*, 149, the plaintiff was sister of the intestate, lived with him nearly fourteen years, and assisted him in the affairs of his family. A sealed note was found among his papers, by which he promised to pay her $2,000, "for value received, and justly and truly due her for services rendered me during my illness;" and yet the court held that she could not recover. The principle applicable to this class of cases cannot be better stated than in the language of the court in *Williams* vs. *Hutchinson* (3 *Coms.*, 312). "Under certain circumstances, when one man labors for another, a presumption of fact will arise, that the person for whom he labors is to pay him the value of his services. It is a conclusion to which the mind readily comes from a knowledge of the circumstances of the particular case, and the ordinary dealings between man and

22

man; but where the services are rendered between members of the same family, no such presumption will arise. We find other motives than the desire of gain, which may prompt the exchange of mutual benefits between them; and hence, no right of action will accrue to either party, although the services or benefits received may be very valuable. And this does not so much depend on an implied contract that the services are to be gratuitous, as upon the absence of any contract or promise that a reward should be paid." (See *S. C.*, 5 *Barb. S. C. R.* 122; *Andrus* vs. *Foster*, 17 *Verm. R.*, 556; *Fitch* vs. *Peckham*, 16 *Id.*, 150; *Swires* vs. *Parsons*, 5 *Watts & Serg.*, 357; *Candor's Appeal*, *Ib.*, 513; 4 *C. & P.*, 93). The language of the cases is very decided, and the justice of the reasoning against such claims commands conviction. In the present instance, the petitioner was taken into the family of his brother, before attaining full age. He was boarded, lodged, and clothed. There was no contract of hiring—no demand for wages made before the relation terminated; there were no accounts kept; and there is no proof of an expectation on either side to pay or be paid; and not a word is heard of a demand, sufficient to sweep away half of the little estate left his widow and children, until it starts into existence nearly two years after Francis Bowen's decease. I have no hesitation in rejecting such a claim. To support it, the petitioner would have to produce very clear and reliable evidence of an express contract; and there not being shown a single fact tending to that point, he has entirely failed in establishin any debt against the estate.