### In re HAVEMEYER'S ESTATE.

### In re HUMFREVILLE.

(Supreme Court, Appellate Division, First Department. June 5, 1896.)

1. WITNESS—COMPETENCY—TRANSACTION WITH DECEDENT.
    Under Code Civ. Proc. § 829, which renders a party an incompetent witness in his own behalf concerning a personal transaction had with a decedent, even if a claimant against a decedent's estate may testify that he did certain work for decedent, it does not warrant the inference that decedent either knew of or authorized the work, since as to these facts he is an incompetent witness.

2. EXECUTORS—POSSESSION OF CHECK—PRESUMPTION OF INDEBTEDNESS.
    Where it appears that an executor, into whose hands came all the papers of his testatrix, has in his possession, without any explanation or inference as to how it was received, an undated check, the body of which is in his own handwriting, but which bears the signature of his testatrix, and that, while the banking house on which it was drawn had an account with the testatrix, there was not money enough to pay the check, the mere possession of the check does not justify the inference that the testatrix was indebted to the executor for the amount named in the check.

3. SAME—REBUTTAL OF PRESUMPTION.
    In such case the circumstances accompanying possession, coupled with the further fact that nothing was said to any of the beneficiaries, or to claimant's co-executor, about the existence of the check, till four years after the death of the testatrix, are sufficient to rebut the presumption of indebtedness that the law raises on the production of a check.

Appeal from surrogate's court, New York county.

Accounting by J. Lee Humfreville, as executor of the will of Mary J. Havemeyer, deceased. From that portion of the decree of the surrogate allowing the claim of the executor against the estate, the co-executor appeals. Reversed.

For former report, see 35 N. Y. Supp. 480.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Henry H. Whitman, for appellant Kent, as executor.
John Brooks Leavitt, for appellant Morton.
Abram Kling, for respondent.

INGRAHAM, J. We do not think there is any evidence to support the finding of the referee that the claimant (the respondent) performed any services for the testatrix, under her retainer or employment, or with her knowledge, for which she was indebted to him. The only testimony as to the performance of any services was that given by the executor. That testimony was all objected to as incompetent under section 829 of the Code; but, assuming that it was competent to prove the fact that he did certain work, it was not competent, either directly or indirectly, to prove the fact that what he did was with the knowledge or consent of the testatrix,

or under her employment.    The case thus stands entirely bare of any testimony proving, or tending to prove, the fact that this testatrix ever employed the defendant to perform any services for her, or had any knowledge that he had performed, or was performing, services for her.    So far as appears by the evidence, the respondent was a mere volunteer, doing this in relation to another's property without her employment, consent, or knowledge.    The principle is now too well settled to be disputed that section 829 of the Code

—"Prohibits, not only direct testimony of the survivor that a personal transaction did or did not take place, and what did or did not occur between the parties, but also every attempt by indirection to prove the same thing, as by negativing the doing of a particular thing by any other person than the deceased, or by disconnecting a particular fact from its surroundings, and testifying to what on its face may seem an independent fact, when in truth it had its origin in, or directly resulted from, a personal transaction." Clift v. Moses, 112 N. Y. 435, 20 N. E. 392.

It was held in that case that the defendant could not be permitted to testify as to the possession of certain notes in suit, there having been evidence that such notes had been delivered by the deceased to the witness.    The rule established by section 829 of the Code is thus stated in the case above cited:

"It may be too broad to say that where the ultimate fact cannot be proved, under this section, by a witness, he cannot testify to any of a series of facts from which the ultimate fact may be inferred; but if there is introduced into this statement the qualification that he cannot testify as to any of the subsidiary facts which originated in a personal transaction with the deceased, or which proceeded from such transaction as a cause, the statement so qualified may be substantially correct."

Applying this statement of the rule to the facts in this case, it is apparent that the respondent could not give competent testimony as to any fact "which originated in a personal transaction with the deceased, or which proceeded from such transaction as a cause."    Thus the fact that he performed certain work in relation to her property, as an independent fact entirely dissociated from any personal transaction with the deceased, may possibly have been competent evidence; but the provision of the Code does not allow us to infer, from the mere performance of services in relation to her property, that she employed him, because that would be allowing him to testify to a fact which would proceed from a personal transaction with the deceased as a cause.    The fact, therefore, that he did the work, could be proved by him.    But, assuming that the fact was competent evidence, the inference from the fact that she either knew of, or authorized, the performance of the services, could not be drawn from his testimony.

So, in regard to the possession of the check, assuming that it was competent for the respondent to testify that at a particular time he had that piece of paper in his possession, under the case of Simmons v. Havens, 101 N. Y. 432, 5 N. E. 73, no inference could be drawn from the fact, as testified to by the respondent, that deceased had delivered the check to him, or that it was given to him as consideration for any services rendered by him to her.    All that the respondent could prove was the independent, isolated fact

that at a particular time he had that piece of paper, in its present condition, in his possession, and from that fact no inference of a personal transaction with the deceased could be drawn. Lerche v. Brasher, 104 N. Y. 157, 164, 10 N. E. 58. We have thus a claim presented against the estate, where there is no evidence that the claimant performed any services at the request or with the knowledge of the deceased, or that she ever delivered to him a check, or acknowledged an indebtedness, but where the claimant has in his possession, without any explanation or inference as to how it was received, an undated check, the body of which is in his own handwriting, and where it appears that, while the banking house upon which it was drawn had an account with the decedent, there was not money enough to pay the check, and where it further appears that the person making the claim is the executor of the testator, into whose possession came all of the principal papers of the testatrix. The question thus is, does the mere possession of the check, under such conditions, justify an inference that the testatrix was indebted to the holder or payee of the check for the amount named? The surrogate having confirmed the finding of the referee that, as a fact, services had been rendered, and that this check was a valid claim against the estate, an exception to that finding raises the question whether there was any evidence to sustain the finding. Burger v. Burger, 111 N. Y. 523, 19 N. E. 99, and 21 N. E. 50. But, in determining these questions as to the validity of a claim made by an executor against the estate of which he is trustee, the courts have always required that there should be presented clear proof of the existence of the claim; and many expressions have been used in the cases as to the nature of the evidence that the courts would require before allowing a claim, under such circumstances, to be established. The general rule now seems to be established that such claims should not be allowed, especially when presented by an executor or administrator, except upon the clearest legal proof, and the facts upon which the claim is based established by very satisfactory evidence. Van Slooten v. Wheeler, 140 N. Y. 624, 35 N. E. 583; Ellis v. Filon, 85 Hun, 485, 33 N. Y. Supp. 138. The claimant relies upon the inference of the existence of a claim against the deceased from the mere fact of the production of the check, relying upon the general rule that the delivery of a check by the drawer to the payee is presumptive evidence of the existence of a debt to pay which the check was given; and it is upon this theory that the respondent must sustain his right to recover. Nothing has been shown to create the slightest inference that the testatrix was indebted to the respondent at this time in any amount, except the bare presentation of the check. But this inference applies only where there is no evidence to show that the check could have been given for another purpose, or could have been obtained by the payee in any other capacity except as that of a creditor in the payment of his real demand. In this case many facts are presented which tend strongly to show that this check may have been received by the respondent for some other purpose than that of paying the debt of the testatrix to

him. It is undated, not even the month or year being written in the body of the check, and is in the handwriting of the respondent, the signature merely being that of the testatrix. The account of the testatrix with the bank upon which the check was drawn was entirely insufficient to pay the check; and thus it could not have been that the testatrix gave the check to the respondent for the purpose of paying him any debt which she owed him, as such could not be used for that purpose, there being no money at the bank to pay it. The fact that the respondent has testified in this proceeding that during this period he was acting in the matter of the testatrix's business, and in relation to her property, cannot be considered, in determining whether this instrument, undated and useless for the purpose of giving the respondent an opportunity to get the money from the bank, was given in payment of an existing indebtedness. And the fact of the relation which had existed between the parties; the fact that he was her executor, and that upon her death he obtained possession of all her papers, coupled with the fact, as before stated, that the check is in his own handwriting, the signature only being written by her; the absolute, unexplained omission of the date; the fact that nothing was said to any of the beneficiaries, or to his co-executor, about the existence of the check, until four years after the death of the testatrix; and the possibility (not that we wish to intimate that we believe it possible, but the possibility) that, a blank check having been found among the testatrix's papers, the respondent could have himself filled it up after her death,—present a case in which the presumption of indebtedness that the law raises upon the production of the check itself is rebutted, and one in which the mere production of the check itself is not the clear and satisfactory evidence which the law requires to establish a claim of this kind.

We think, therefore, that the decree of the learned surrogate, so far as it allows the claim of the respondent as a valid claim against the estate of the decedent, should be reversed, with costs to the co-executor of the estate to be paid by the respondent, and the proceeding remitted to the surrogate for further action. All concur.